UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ROSEMARY BONILLA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:09-CV-153 CAN |
| MICHAEL J. ASTRUE Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On January 5, 2009, Plaintiff, Rosemary Bonilla ("Bonilla"), filed her complaint in this Court. On August 5, 2009, Bonilla filed an opening brief, and she asks this Court to enter judgment in her favor or remand this matter to the Commissioner. On September 30, 2009, Defendant, Social Security Administration ("SSA"), filed a response. On October 28, 2009, Bonilla filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, motions, the administrative record and the briefs of the parties.

**I.   PROCEDURE**

On February 18, 2005, Bonilla filed an application for disability insurance benefits ("DIB") alleging an onset date of April 24, 2004. Bonilla claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614. Bonilla's application was initially denied May 6, 2005 and again upon reconsideration December 1, 2005. Bonilla filed a request for hearing on January 5, 2006.

On November 7, 2007, Bonilla appeared at a hearing before Administrative Law Judge Bernstein ("ALJ") in South Bend, Indiana. Bonilla was represented by an attorney and testified

1

at the hearing. The ALJ also heard testimony from vocational expert ("VE") Donna Whitcomb.

On September 24, 2008, the ALJ issued a decision denying Bonilla's claim. The ALJ found that the medical evidence of record supported a finding that Bonilla experiences severe impairments, due to Raynaud's phenomenon and fibromyalgia. However, the ALJ found that Bonilla did not have any impairments that met the listed impairments in 20 C.F.R app. 1, subpart P. § 404. Additionally, the ALJ noted that no treating physician or examining source indicated that Bonilla's conditions either alone combined equate to any Medical Listing. Further, ALJ indicated that these conditions are not specific to any Medical Listing and therefore are evaluated on based on the actual degree of limitation that they in impose.

In the instant case, the ALJ found that Bonilla had a residual functional capacity sufficient to perform a limited range of light work. In particular, the ALJ specified that Bonilla: (1) could lift and carry 20 pounds occasionally and 10 pounds frequently, (2) cannot engage in work requiring constant manipulation involving fine work such as gripping, grasping, twisting, turning, etc. with her hands and fingers, (3) could not perform work that requires close regimentation of production, and (4) that close and critical supervision would produce unacceptable distress. Based on these findings, the ALJ determined that Bonilla could perform her past relevant work as a retail store deli cutter. Thus, the ALJ determined that Bonilla was not disabled. Accordingly, the ALJ denied Bonilla's application for DIB.

On February 5, 2009, the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on January 6, 2009, Bonilla filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter

based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

Bonilla contends the ALJ's decision should be reversed and remanded because it was not based on substantial evidence and contains errors of law. Specifically, she argues the ALJ ignored evidence and incorrectly analyzed the limiting effects of her Raynaud's and fibromyalgia. Additionally, Bonilla argues that the ALJ's credibility finding and Step Four determination that she can perform her past work were improper.

### A. Facts

Bonilla was 45 years old at the time of her alleged onset of disability and was 51 at the time of the ALJ's decision. Bonilla lives with her husband, her past relevant work includes work as a deli cutter and a material handler and she has an eleventh grade education. Bonilla alleges she became disabled on April 24, 2004 due to pain and swelling in her hands.

On September 28, 2004, Bonilla was seen by her family physician Dr. Gardner at which time she complained of arms pain and heaviness. Dr. Gardner's noted the possibility Bonilla may have suffered a transient ischemic attack

On January 27, 2005, Bonilla returned to Dr. Gardner noted bilateral wrist pain with "etiology unknown" and prescribed pain medication.

In February and March of 2005, Bonilla was seen by Dr. James Hartson M.D.who diagnosed Bonilla ulnar neuritis and recommended therapy.

On April 25, 2005, Bonilla was examined by state agency physician, Dr. Thomas P. Barbour, M.D. Bonilla told Dr. Barbour that she had pain from bilateral carpal tunnel syndrome and Raynaud's but that she did not use splints or medications to treat the pain. Dr. Barbour

found Bonilla's muscle strength in all extremities were fully intact, her gait and posture, reflexes, pin- prick and soft touch sensation and fine finger abilities were all normal. Dr. Barbour indicated Bonilla's bilateral carpel tunnel syndrome, Raynaud's phenomenon, and chronic wrist and elbow pain interfered with Bonilla's daily activities. Dr. Barbour noted his prognoses with regard to improvement for Bonilla's bilateral carpal tunnel as guarded, good in regard to her chronic elbow pain and guarded in regard to her chronic wrist pain.

On May 24, 2005, Dr. Gardner noted Bonilla's her hands were "dark" and exhibited "poor circulation. On June 3, 2005, Dr. Gardner diagnosed Bonilla as having Raynaud's phenomenon and adjusted her pain medications. In July 2005, Bonilla had two follow up exams at which was complained of pain radiating from her hands to her elbows but that her "wrists were okay" on the July 18th appointment, Dr. Gardner recommended that Bonilla take Tylenol, exercise regularly and see a rheumatalogist.

On August 25, 2005, Dr. Gardner completed a State Agency medical form noting a diagnosis of Raynaud's phenomenon or Sjorgen's Syndrome that was "getting worse." Additionally he listed "severe" joint pain, tenderness, and stiffness in her hands, wrists and feet. He listed moderate instability with her hands, moderate swelling in her feet and ankles and moderate inflammation in her hands, ankles, and feet. Dr. Gardner indicated Bonilla's grip strength as ranging from 2/5 to 4/5 bilaterally. He also noted that buttoning, opening a jar and turning a door knob would be difficult for Bonilla. Also, Bonilla could not sustain "prolonged" activities such as tying her shoes, zipping or picking up a coin. However, Dr. Gardner did not indicate that she was unable to perform any of these activities and that she had no limitations in dialing a telephone or writing.

On November 3, 2005, Bonilla was seen by Dr. Nicholas R. Straniero, M.D., a rhuematologist. Dr. Strainero indicated Bonilla presented with Raynaud's, myofascial pain, reduced range of motion in her shoulders and reduced grip strength in her right hand. He also strongly discouraged Bonilla from smoking.

On November 28, 2005, Dr. Ralph E. Inabnit performed a consultative state agency exam. Dr. Inabnit noted Bonilla to have slow filling capillaries, reduced bilateral grip strength to 4/5 but otherwise found her hands to be normal. Dr. Inabnit indicated that patient reported that she suffered from chronic fatigue related to her symptoms. Dr. Inabnit concluded she had evidence of of Raynaud's phenomenon and chronic fatigue. He recommended additional testing and for patient to stop smoking.

On November 28, 2005, state agency physicians, Dr. F. Montoya M.D and .Dr. Bruce H. Whitley, M.D. reviewed and affirmed Dr. Inabnit's non-severe finding.

On May 4, 2006 and October 26, 2006 Bonilla was for a follow -up exams by Dr. Straniero, who noted Bonilla presented with , "residual, "mild Raynaud's, " and "striking Raynaud's," respectively, but had not been taking her prescription medication.

On April 24, 2007, Bonilla returned to Dr. Straniero at which time he indicated a "serious abuse of medication," by Bonilla as she had increased her dose of pain medication without seeking medical attention. Dr. Straniero noted that she had some generalized tenderness, an atypical pattern of myofascial pain, and mild Raynaud's. Bonilla was asked to return when the weather was cold for further evaluation.

In August of 2007, Dr. Gardner noted Bonilla was still smoking and as such prescribed Chantix, a smoking cessation medication.

5

On October 18, 2007, Dr. Straniero saw Bonilla at which time he indicated "mild Raynaud's," and tender points consistent with fibromyalgia. He recommended that Bonilla's Raynaud's symptoms to be addressed by discontinuation of smoking and prescribed and anti-depressant and also recommended regular exercise and physical therapy.

On October 24, 2007, Dr. Gardner provided a Medical Source Statement ("MSS') that indicated Bonilla was unable to perform sustained competitive employment. Dr. Gardner indicated that Bonilla could only frequently and occasionally lift or carry less than 10 pounds, and could stand or walk about 6 hours in an 8 hour workday. He also noted that she would be limited in pushing in pulling with her arms and legs and could occasionally to never climb, balance, kneel, crouch, crawl or stoop. Also, Dr. Gardner indicated that Bonilla can occasionally reach, handle, finger and feel and stated that she tends to drop things and has problems with strength in her hands and has trouble grasping for prolonged periods. He also indicated that she should avoid exposure to temperature extremes, vibration and humidity/wetness. Dr. Gardner cited Bonilla's moderately severe Raynuad's phenomenon to support his findings.

On November 1, 2007, Dr. Straniero also completed a MSS. He opined that Bonilla could occasionally life to carry 20 pounds, frequently carry less than 10 pounds, and stand or walk at least 2 hours in and 8-hour workday provided that she could periodically alternate between sitting and standing. He also opined that she had limitations regarding pushing and pulling with her arms and legs and could occasionally climb, balance, kneel, crouch, crawl or stoop and only occasional reaching and handling but that she could finger and feel with no limitations. He indicated that she should have limited exposure to temperature extremes, vibrations, hazards and fumes.

On November 16, 2007, Dr. Straniero, provided a letter to Bonilla's attorney indicating her condition was exacerbated by exposure to cold but might also be induced by vibrations. The doctor detailed the symptoms of Raynaud's and reported that Bonilla had "chronic pain" and difficulty dealing with activities associated with day to day living and that she could not keep a job. Dr. Straneiro indicated that Bonilla's pain is a subjective, non-measurable symptom" but that he had no reason to believe the Bonilla was not sincere in her testimony

On January 15, 2008, Bonilla underwent a consultive pyschological evaluation performed by DDS-selected doctor, Dr. Patrick W. Utz, Ph.D. The evaluation consisted of an interview and administration of the Minnesota Multiphase Personally Inventory ("MMPI"). Dr. Utz indicated Bonilla's responses to the MMPI were inconsistent because she was either unable to read the test or responded randomly, and as such was unable to score the test.

On February 12, 2008, Dr. Gardner treated Bonilla for pain incident to fibromyalgia. His notes indicate the diagnoses of fibromyalgia, Raynuad's, and chronic pain.

On March 11, 2008, Dr. Straniero indicated that Bonilla was still adjusted dosages of her medications with medical supervision and selectively taking other medications occasionally.

On May 20, 2008, Dr. Gardner provided additional medical opinion letter that stated due to the Raynaud's Bonilla experienced painful changes in her hands and feet. Additionally, he opined that Bonilla could only be on her feet for 40 minutes, had trouble going up and down stairs, and had a tendency to drop things.

On July 16, 2008, Dr. Gardner provided Bonilla's attorney with a letter that indicated Raynaud's as the primary issue impacting Bonilla's physical limitations in additional to anxiety/panic attacks that decrease her ability to function in a workplace.

On November 7, 2007 Bonilla testified that she had worked as a deli-cutter and a material handler. Bonilla stated that she lived by herself during week and vacuumed, prepared meals, shopped, cleaned house and washed dishes but took frequent breaks when completing these tasks. She testified that she could drive but was limited if the steering was too cold. She stated she had to elevate her feet and activities with her hands were limited. Additionally, Bonilla testified that she had simultaneous episodic swelling in her hands and feet.

B.      Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C. Bonilla's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Bonilla must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

8

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether the ALJ's determination of residual functional capacity was supported by substantial evidence, (2) whether the ALJ properly assessed Bonilla's credibility, and (3) whether the ALJ made erroneous findings that she could

9

perform her past work  This Court will address each of Bonilla's arguments in turn.

>    1.    <u>The ALJ's residual functional capacity determination is supported by substantial evidence</u>.

Bonilla has alleged that the ALJ improperly determined her residual functional capacity. In particular, Bonilla alleges that the ALJ selectively analyzed the record to reach a desired outcome that limited the effects of her fibromyalgia and Raynaud's by erroneously dismissing the findings of Dr. Gardner and Dr. Straniero findings in part. Bonilla additionally argues that the ALJ improperly assessed her complaint of fatigue and its relationship with her fibromylagia diagnosis.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. <u>Lopez v. Barnhart</u> 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1972).

Further, an ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir.2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); <u>Clifford</u>, 227 F.3d at 870. However, medical evidence may be discounted if it is

10

internally inconsistent or inconsistent with other evidence in the record. Id. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence that the ALJ must consider. Hofslien, 439 F.3d at 377. Nevertheless, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

Regardless of how much weight the ALJ assigns to any physicians, an ALJ must, at least, address the claimant's treating physicians' opinions and explain the weight given to them before affording greater weight to that of a non-treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."); Knight v. Chater, 55 F.3d 309, 313 (7th Cir.1995). While the ALJ is not required to award a treating physician controlling weight, the ALJ must, at a minimum, sufficiently articulate his reasoning for not doing so. Id.

In the immediate case, the ALJ offered a sufficient explanation of the weight given to the opinions of Bonilla's treating physicians, Dr. Gardner and Dr. Straniero. Bonilla contends the ALJ improperly discounted these doctors' opinions in an effort to selectively analyze the record to ignore the limiting effects of her fibromyalgia and Raynaud's phenomenon. However, a review of the record reveals that this contention is easily rebutted as the ALJ gave a sufficiently supported explanation as to why he was discounted these medical opinions. For example, the ALJ explained that he assigned minimal weight to Dr. Gardner's opinion because it was not well supported objectively, was internally inconsistent and was contradicted by other substantial evidence in the record. Specifically, the ALJ concluded that Dr. Gardner's opinion primarily

relied on Bonilla's subjective complaints which were not supported by Dr. Gardner's treatment records or diagnostic test results from other treating or examining medical sources. The ALJ found that, although, Dr. Gardner opined that Bonilla was disabled and referenced vocational relevant limitations to accompany his disability finding, Dr. Gardner failed to list any objective findings to support these limitations. In further support, the ALJ indicated that Dr. Gardner's contention that his patient's symptoms had been present for more than three years was unsupported by objective evidence including his own treatments notes. To illustrate this point, the ALJ cited the fact that Dr. Gardener's treatment notes reflect no complaints or findings associated with the claimant's hands through January 27, 2005 and it was not until May of 2005 that complaints related to Raynaud's began to be reported or observed. Also, the ALJ noted that Dr. Gardner classified Bonilla's range of motion as only being mildly reduced. The ALJ also noted that Dr. Gardner was the only physician to make certain findings regarding Bonilla's symptoms, conditions and limitations. The ALJ noted that Dr. Gardner completed an Agency medical form that noted instability in the hands, moderate swelling in the hands and ankles, and moderate inflammation in the hands, ankles and feet but none of these finding were reflected in any of Dr. Gardner's treatment notes or records. The ALJ indicated that these finding were not reflected by any other treating or non-treating physician. The ALJ also noted Dr. Gardner was the only physician to indicate a reduced grip strength below 4/5. As such, this Court finds that the ALJ sufficiently supported his reasoning for having afforded Dr. Gardner's opinion minimal weight due to a lack of objective evidence to support his contentions.

The ALJ further stated the while he was afforded more weight to Dr. Straniero's opinion than Dr. Gardner's his [opinion] is not accepted where it is found to be unsupported and

inconsistent with the overall evidence of record. Consequently, the ALJ discounted Dr. Straniero's opinion Bonilla could only stand/walk for two hours a day because of a lack of objective evidence to support this limitation The ALJ indicated this limitation was in question because were no indications in Dr. Straniero's treatment records to support this restriction. Additionally, the ALJ dismissed Dr. Straniero's limitations in regard to temperature extremes, vibrations, hazards and fumes-not contained in the RFC because of the lack of supporting laboratory findings other than a single borderline antibodies test with all other findings negative, and Dr. Straniero's generally benign examination findings. As such, the ALJ cited substantial evidence to support his partial acceptance of Dr. Straniero's medical source statement.

In conclusion, the ALJ found the medical opinions of Dr. Gardner and in part Dr. Straniero to be insufficiently supported and in contradiction with other record evidence. The ALJ supported his conclusions by specifically citing to evidence in the record. Therefore, the ALJ has met the required threshold for discounting these opinions and affording them minimal weight. See 20 C.F.R. § 404.1527(d)(2) ( "We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion.").

Bonilla's additionally argued that the ALJ played doctor to ignore the limiting effects of Raynaud's and fibromyalgia when he discounted treatment of her alleged complaint of fatigue. Again, a review of the record will reveal these contentions are easily rebutted, as the ALJ's RFC determination is substantially supported the record evidence. Bonilla contends that fatigue is one of the prominent symptoms of fibromyalgia. However, a diagnosis of a particular impairment or presence of a particular symptom alone is insufficient to establish disability. See 20 C.F.R. § § 404.920(f),(g). Furthermore, the Seventh Circuit has repeatedly found that "fibromyalgia is not

always (indeed, not usually) disabling." Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); accord Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). In the immediate case, the ALJ indicated that the record reflected Bonilla only complained of fatigue once to a state agency physician and that while Drs. Strainiero and Gardner had the specific opportunity to list fatigue on their respective MSS or treatment records, neither did so. As such, the ALJ addressed Bonilla's complaint of fatigue sufficiently and afforded it minimal weight due to the lack of evidence in support of her claim. Therefore, this Court finds that the ALJ's treatment of Bonilla's complaint of fatigue was proper. Further, this Court concludes that the ALJ gave a thorough and comprehensive review of Bonilla's medical history. Following that review, the ALJ indicated that he based his RFC determination on the entirety of the evidence, including the conclusions of state agency physicians, Dr. Barbour, Dr. Inabnit, and Bonilla's treating physician, Dr. Straniero. In doing so, the ALJ demonstrated his obligation to assess the entire record, and evidenced that the RFC assessment was based on the entirety of this evidence.

Accordingly, this Court concludes that the ALJ's RFC finding is substantially supported and sufficiently articulated.

    2.    <u>The ALJ's determination regarding Bonilla's credibility is supported by substantial evidence</u>.

In addition, Bonilla alleges that the ALJ's determination of her credibility was erroneous. Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003): Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). See also Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an

14

observation or argument that is unreasonable or unsupported ... can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir.2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 966-7p. When an ALJ's determinations are based on objective factors rather than subjective consideration, such as the claimants demeanor, there is greater freedom to review the ALJ's decision. Clifford v. Apfel, 277 F.3d 863, 872 (7th Cir. 2000).

  This Court begins its analysis, giving substantial deference to the ALJ's credibility determination. See Jens, 347 F.3d 209 at 213 (holding that credibility determinations are only to be overturned if patently wrong). As such, this Court limits it review to determining whether the ALJ's opinion is supported by substantial evidence in the record and whether the ALJ adequately articulated the reasons for his conclusions. Haynes, 416 F.3d at 626; Zurawski, 245 F.3d at 887.

  Bonilla contends the ALJ made an improper credibility finding by relying on his own lay opinion of what the evidence shows. However, this Court has already found the ALJ's assessment of Bonilla's RFC is consistent with and supported by substantial record evidence. As such, this Court has already found that the ALJ sufficiently articulated the specific evidence, including the objective and subjective factors he used to determine Bonilla's RFC. Accordingly, this Court has

found the ALJ's opinion is proper as it is supported by this specifically articulated record evidence. Therefore, Bonilla's argument that the ALJ improperly relied upon his on his own opinion in determining her credibility is unpersuasive.

Bonilla also argued that the ALJ relied too heavily on objective factors in determining her credibility. This Court also finds Bonilla's contention that the ALJ relied too heavily on objective factors to be similarly unpersuasive. The ALJ took into consideration Bonilla's numerous physical complaints regarding pain associated with her limbs, particularly her hands, but noted that the evidence of record did not support Bonilla's reported degree of symtomatology and level of dysfunction. Additionally, the ALJ cited that Bonilla's neurologic functions regarding motor skills, reflex activity and sensation were largely intact and that clinicians observed only a minimal reduction in bilateral grip strength. Further, all physicians opined that Bonilla retained a functional range of motion.

In addition to objective evidence the ALJ also took into considered Bonilla's own testimony regarding her daily living activities. Bonilla testified that she lived independently during the week and that she was able to cook, clean, do laundry, and drive with some limitation when the steering wheel was too cold, and exercise 30 minutes a day 3-5 times as week.

As such, this Court finds that the ALJ did not rely on objectives factors alone or too heavily in making his credibility determination.

Bonilla also argued that the ALJ improperly discounted her credibility due to his non-compliance with repeated physicians recommendations to quit smoking, contrary to SSR 96-7p and 20 C.F.R. § 404.1529. The ALJ considered Bonilla's repeated non-compliance with medication and what Dr. Straneiro noted what he considered to be a serious abuse of medication

16

by Bonilla in April 2007. On the latter occasion Bonilla reportedly increased her dose of pain medication with out seeking medical attention. Bonilla's claim is without merit. A claimant's failure to follow a treatment plan can decrease credibility when a claimant "does not have a good reason for the failure ... of treatment." However, before the ALJ may draw inferences about the claimant's condition in relation to non-compliance, an ALJ first must allow the claimant to explain the reasons for non-compliance. Craft v. Astrue, 539 F.3d 668, 679 (7th Cir. 2008) (illustrating that failure to comply due to inability to pay for treatment, for example, may be an acceptable reason for non-compliance). In the immediate case, the ALJ noted that Bonilla stated her only reason for non-compliance was that she would rather smoke than gain weight. As such, the ALJ properly considered Bonilla's failure follow a treatment plan to quit smoking when determining his credibility finding. As such, the ALJ concluded that this explanation was not sufficient enough to overcome Bonilla's non-compliance as a factor when he found her to be not credible. Therefore, this Court finds that the ALJ properly considered Bonilla's failure to follow a treatment plan to quit smoking when he determined Bonilla's credibility.

  Bonilla additionally argues that the ALJ improperly considered the results of her MMPI-2 when he made his credibility determination. Specifically, this Court notes that the ALJ inappropriately attributed a negative credibility inference from the inconclusive results of Bonilla's MMPI-2 exam. The record reflects that Dr. Utz the physician who administered and attempted to score the exam indicated that Bonilla was either unable to read the test or that she responded randomly and that the test should be repeated. However, the ALJ treated these results in a manner that reflected upon Bonilla's credibility. Although the ALJ acted presumptively when he concluded that "while there is no indication that Bonilla is unable, the claimant's failure

17

to provide valid answers during testing casts doubt upon her allegations as to the level of symptoms and limitations," this Court finds that this error is harmless and not material, in light of the detailed explanation and abundant evidentiary support used to support the ALJ's credibility finding.

This evidence indicates that the ALJ relied upon substantial record evidence to support his credibility finding, including both objective factors, such and medical findings, and subjective factors, such as Bonilla's contentions about her lifestyle. Such discussion of the evidence creates the requisite evidentiary support and logical basis that is necessary for this Court to uphold the ALJ determination. See Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Accordingly, this Court finds the ALJ's credibility finding to be substantially supported and sufficiently articulated.

      3.      <u>The ALJ's made a proper Step Four finding</u>

Finally, Bonilla argues that the ALJ erred in finding that she could perform her past relevant work as a deli cutter and a material handler. At step four of the ALJ's analysis, the ALJ must determine if the claimant still has an RFC that permits her to perform her past relevant work. 20 C.F.R. § 404.1520(e). In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities. Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984). The ALJ can "base his comparison on the functional demands and job duties of the applicant's past occupation as generally required by employers throughout the national economy." Orlando v. Heckler, 776 F.2d 209, 215-16 (7th Cir.1985). Further, an applicant who "cannot perform the excessive functional demands and or job duties actually required in the former job but can perform the functional demands as generally

18

required by employers throughout the economy" should not be found to be disabled. Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2003).When a vocational expert provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that evidence and the information provided in the DOT. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). If the vocational expert's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict. Id. If a claimant does not identify a potential conflict at the time of the hearing then the claimant must show on appeal that the conflict was obvious enough that the ALJ should have noticed without any assistance. Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008).

Bonilla contends that the ALJ committed two errors in making his Step Four finding. First, she alleged that the ALJ 'failed to address [her] complaints as to her limitations," specifically the need to elevate her legs and exposure to extreme cold and vibrations. Second, Bonilla argued that if the ALJ had incorporated these limitations into her RFC it would have "eliminated the work as described in the DOT as generally performed." Bonilla additionally made a related argument that the ALJ failed to obtain a reasonable explanation for the apparent conflict between the VE's testimony and the DOT description.

This Court finds Bonilla's arguments to be nothing more than a challenge to RFC determination, which this Court has already found to be supported by substantial evidence. However, even if the ALJ erred by failing to include a limitation on exposure to extreme cold and vibration there would be no need to resolve any issue between the DOT description and the testimony of the VE because the VE testified the deli worker position, as generally performed does not include exposure to extreme cold or vibration. Therefore the error would be harmless

and would not require the reviewing court to upset the agency's decision.  As such, this Court also finds Bonilla's argument regarding the failure of the ALJ to obtain a reasonable explanation for the conflict between the VE's testimony and the DOT description is without to be unpersuasive.

Accordingly, this Court concludes that the ALJ's step four finding, regarding Bonilla's ability to perform her past work was proper.

### III.   CONCLUSION

This Court concludes that the ALJ's determination of Bonilla's RFC was sufficiently articulated and supported by substantial evidence. Additionally, the ALJ's analysis of the claimant's credibility was supported by substantial evidence.  Finally, this Court finds the ALJ's Step Four determination was also proper.  Therefore, Bonilla's motion for reverse or remand is **DENIED**. [Doc. No. 16]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 23rd Day of December, 2009.

 S/Christopher A. Nuechterlein    
Christopher A. Nuechterlein  
United States Magistrate Judge